IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM JAMES MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 4183 |
| | ) | |
| v. | ) | Judge Kennelly |
| | ) | |
| P.O. RICHARD HEGER, P.O. AVITA CORTES, and CITY OF CHICAGO | ) ) | Magistrate Judge Mason JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## **FIRST AMENDED COMPLAINT**

Plaintiff, William James Moore, complains of Defendants, the City of Chicago, City of Chicago Police Officer Richard Heger and City of Chicago Police Officer Avita Cortes as follows:

## **PARTIES**

1. Plaintiff, William James Moore, is a citizen of the United States of America and was at all relevant times a resident of Chicago, Illinois. He has attended colleges, including Columbia College in Chicago, studying hotel management, entertainment business and television. Mr. Moore is a long-time producer of an entertainment television program called *Divas Cabaret* which airs every Wednesday on CANTV, a local access channel that can be viewed in and around the City of Chicago. Mr. Moore has recently completed and aired his 120th episode of this program and is currently working on the production of the seventh season of his show. Mr. Moore has worked on approximately 200 television projects to date.

2.     Defendant City of Chicago is an Illinois municipal corporation, organized under the laws of the State of Illinois.  The City of Chicago is responsible for the policies, procedures, practices and/or directives created and implemented through its various agencies, departments and employees as well as for injury occasioned thereby.  One such department is the Chicago Police Department.  The City of Chicago was and has been the employer of both individual defendants, namely Chicago Police Officer Richard Heger and Chicago Police Officer Avita Cortes, at the times of the events complained of herein.

3.     As further alleged below, the City of Chicago was fully aware of details of the prior allegations of police misconduct and charges of police brutality made against Officer Heger prior to and during the events complained of herein.

4.     At the time of the events complained of herein, Defendant Officer Richard Heger ("Heger") was a duly-appointed and acting police officer for the City of Chicago Police Department in the 23rd District, located at 2600 N. Halsted Street, Chicago, IL, 60613.  At all relevant times herein, defendant Heger was acting pursuant to the policies, procedures, practices and/or directives from the City of Chicago.

5.     On at least two occasions, prior to the incidents complained of herein, Officer Heger was charged with wrongful acts involving police brutality and violations of the constitutional rights of other citizens of the City of Chicago, including claims for alleged wrongful death and alleged failure to provide medical treatment under 42 U.S.C. §1983, which resulted in a significant monetary settlement in favor of the representative of the deceased.

6.      At the times of the events complained of herein, Defendant Avita Cortes ("Cortes") was a duly-appointed and acting police officer for the City of Chicago Police Department in the 23rd District, located at 2600 N. Halsted, Chicago, IL, 60613. At all relevant times herein, defendant Cortes was acting pursuant to the policies, procedures, practices and/or directives from the City of Chicago.

## JURSIDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the violation under color of law of William Moore's rights as secured by the United States Constitution. This court has jurisdiction pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the Constitution and laws of the United States.

8.      This court has jurisdiction over the state law claims for battery, negligence and unlawful arrest and malicious prosecution pursuant to 28 U.S.C. § 1367(a) because the 42 U.S.C. § 1983 violations as well as the alleged liability associated with the claims for battery and negligence all arise from a common nucleus of operative fact.

9.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because the City of Chicago is a municipal corporation in this district, and all of the acts and omissions giving rise to the claims asserted herein occurred within this district.

**STATEMENT OF FACTS**

10. On the evening of Friday, September 30, 2005, William Moore went out to meet his girlfriend, who was out with friends at Jackhammer's Bar on Clark Street in the Rogers Park area, near the intersection of Clark Street and Devon Street, in the City of Chicago.

11. Mr. Moore rode his bicycle part of the way and then traveled with his bicycle on the Chicago Transit Authority ("CTA") Green Line, ultimately transferring to the CTA Red Line and exiting the train at the Granville stop. After exiting the train, Mr. Moore rode his bicycle to the intersection of Clark Street and Devon Street where he locked the bike near the front of Jackhammer's Bar.

12. On the evening of September 30, 2005 and early morning of October 1, 2005, Mr. Moore was wearing denim jeans with an oversized (XXXL) white jacket with blue sleeves with "Puerto Rico" written across the front in big blue writing with red trim.

13. Mr. Moore is a relatively skinny African-American male who is six feet tall and weighs about 155 pounds.

14. At approximately 2:00 a.m. on the morning of October 1, 2005, Mr. Moore and his girlfriend left Jackhammer's Bar and headed home together on the No. 22 Clark Street bus. Mr. Moore attached his bicycle to the bicycle rack on the front of the bus.

15. Mr. Moore did not consume any alcohol at any time during the evening of September 30, 2005 or in the early morning of October 1, 2005. Mr. Moore's girlfriend, however, became extremely intoxicated.

16. About twenty minutes into the commute home, Mr. Moore's girlfriend, who was very intoxicated, suddenly decided to exit the bus at the intersection of Clark Street and School Street in the City of Chicago.

17. Mr. Moore was not able to exit the bus fast enough to follow after his girlfriend since he had to unload his bicycle from the front bike rack of the bus. Instead, Mr. Moore waited until the bus stopped at the next stop which was at the Clark/Belmont. Mr. Moore quickly exited the bus, got his bicycle off the rack in front of the bus and rode his bicycle back north down Clark Street to the intersection of Clark Street and School Street, where his girlfriend had exited the bus.

18. When Mr. Moore did not see his girlfriend on the street, he became concerned about her safety. Mr. Moore locked his bicycle across the street from the Clark and School bus stop and began walking up and down Clark Street, frantically searching for his girlfriend who had disappeared.

19. While Mr. Moore was searching for his girlfriend walking southbound on Clark Street, Officer Cortes and Officer Heger were driving northbound on Clark Street in a squad car. They saw Mr. Moore, made a "U-turn" and pulled up next to him in their squad car. Officer Cortes and Officer Heger, both acting under the color of state law, exercised their authority as Chicago Police Officers in stopping Moore while he was lawfully walking down the street in the 3200 block of North Clark Street, within the city limits of the Chicago.

20. Although Officer Heger and Officer Cortes were responding to a call of a heavy-set or "husky" fare jumper wearing a blue t-shirt and blue jeans at a CTA train station located in the 900 block of Addison Street, more than four (4) blocks from where

5

Mr. Moore was stopped by Officer Heger and Officer Cortes, neither Officer Heger nor Officer Cortes informed Mr. Moore of their reason for stopping him.

21. At no time during the stop and/or subsequent arrest of Mr. Moore did Heger and Cortes inform Mr. Moore that they needed to ask him questions or that they were searching for a CTA "fare jumper." Neither Officer Heger nor Officer Cortes asked Moore whether he had been riding the CTA train earlier in that morning or where he was coming from. In fact, neither officer said anything to Mr. Moore or gave him any information or reason for stopping or subsequently arresting him with significant force.

22. Without telling Mr. Moore why he was being stopped or what they were searching for, Officer Cortes quickly got out of the squad car from the passenger side and approached Mr. Moore while yelling commands at him loudly to stop and subjected him to a search spread against the squad car.

23. Without telling Mr. Moore why he was being searched, Officer Cortes immediately placed Mr. Moore against the squad car, began searching him roughly and aggressively grabbed his arms.

24. Officer Cortes pulled Mr. Moore's personal belongings from his clothing pockets and put them on the hood of the squad car, including a partially empty Coke bottle, a DVD for one of Mr. Moore's video projects and a coin pouch containing coins.

25. Officer Cortes became more aggressive and physical with Mr. Moore who had his hands on the squad car hood.

26. When Mr. Moore stated to Officer Cortes that the only items he had on his body were a Coke bottle and a DVD, and asked Officer Cortes why he had been stopped and was being roughly searched.

6

27. Officer Cortes, without responding to Mr. Moore's question, simply informed that she would arrest Mr. Moore and take him into custody.

28. When Mr. Moore again asked for a reason for his arrest and informed Officer Cortes that she lacked any probable cause to arrest him, Officer Cortes became very aggressive in handling Mr. Moore against the squad car.

29. Without telling Mr. Moore why he had been stopped, was being searched and now arrested, Defendant Heger then stepped out of the squad car from the driver's side and quickly approached Mr. Moore.

30. When Mr. Moore asked Officer Heger for a reason for the search and threatened arrest and informed the officer of his belief that the police had no probable cause to arrest him, Officer Heger became very agitated and aggressive toward Mr. Moore, pulled out a handcuff, forcefully grabbed and then pushed Mr. Moore's body against the squad car and then attempted to handcuff Mr. Moore.

31. Like Officer Cortes, Officer Heger did not inform Mr. Moore why he was being stopped, searched and arrested.

32. Uncertain why the officers were trying to handcuff him and take him into custody, concerned about his safety and afraid that he would not be able to continue his search for his girlfriend thought to be roaming in the nearby area early in the morning by herself in an extremely intoxicated condition, Mr. Moore pulled away in an attempt to avoid being handcuffed.

33. Officer Heger became even more aggressive and pulled Mr. Moore's jacket into a position that covered Mr. Moore's head completely and blocked his vision. Officer Heger then punched Mr. Moore on the side of his head, his face and other parts

7

of his body. Unaware why he was being arrested and physically assaulted and afraid of bodily harm, Mr. Moore struggled to get free from Officer Heger.

34. Mr. Moore was able to get free from Officer Heger and ran south down Clark Street trying to get away from the officers.

35. Mr. Moore was subsequently stopped at the intersection of Clark Street and Belmont Avenue by other Chicago police officers who repeatedly shot Mr. Moore with an electro-shock gun commonly known as a "Taser gun."

36. Mr. Moore was then handcuffed and placed into the backseat of a squad car by the arresting officers. The arresting officers then drove Mr. Moore to the 23rd District Police Station, located at 2600 North Halsted Street in Chicago.

37. At the 23rd District Police Station, Mr. Moore was placed into an interrogation room and his right arm was handcuffed to the wall. Mr. Moore, who was aware of prior accounts and reports of instances of police brutality, against African-American males at the 23rd District Police Station, was scared for his safety.

38. Left alone in the interrogation room, Mr. Moore was able to use his left hand to remove his cell phone from his left pocket and place a call to his mother to inform her of his whereabouts in the event that some great bodily harm was inflicted upon him.

39. Officer Heger and Officer Cortes subsequently arrived at the police station and came into the interrogation room where Mr. Moore was sitting in a chair with his right hand handcuffed to the wall. Officer Heger immediately approached Mr. Moore and, from a standing position, Officer Heger began kicking Mr. Moore in the chest and arm. Officer Heger continued assaulting Mr. Moore by bending down and grabbing Mr.

Moore by the shoulders and repeatedly and violently bashing Mr. Moore's head and back against the wall.

40. Officer Heger also pulled Mr. Moore's hair with so much force that Mr. Heger pulled a clump of hair out of Mr. Moore's head.

41. Mr. Moore's ability to shield his body from Officer Heger's assault was limited because he was sitting down and his right arm was handcuffed to the wall.

42. Officer Cortes was present during Officer Heger's physical assault of Mr. Moore in the interrogation room and shouted at Officer Heger to stop attacking Mr. Moore.

43. Officer Cortes, however, did not attempt to intervene and stop Officer Heger from inflicting further bodily harm on Mr. Moore, did not get any help from other officers at the police station to stop Officer Heger's continued assault on Mr. Moore and, instead, watched and allowed Officer Heger to continue assaulting Mr. Moore.

44. As a result of the physical assault by Officer Heger that Officer Cortes allowed to proceed unabated, Mr. Moore suffered pain and injury in his right wrist, shoulder, back, neck and head.

45. Because of his awareness of prior instances of police brutality by police officers from the 23rd District, Mr. Moore did not say anything to Officer Heger or Officer Cortes before, during or after the physical assault in the interrogation room at the 23rd District Police Station.

46. Later in the day, the CTA supervisor, who had made the "fare jumper" complaint, was summoned by the Chicago Police Department to identify Mr. Moore as the suspect in the incident. The CTA supervisor visited the 23rd District Police Station

while Mr. Moore was still in the interrogation room and informed the Chicago Police that Mr. Moore was not the suspect, shaking his head and indicating with his hand motions that the suspect had been a much huskier man and commenting to the effect of "Who is that guy? He is not our man."

47. Notwithstanding the above, the Chicago Police Department nonetheless charged Mr. Moore with, among other charges, criminal trespass on the CTA property.

48. On or about October 7, 2005, the criminal trespass charge against Mr. Moore was dropped at a proceeding at the Circuit Court of Cook County, Branch 42 located at Belmont Avenue and Western Avenue in Chicago, Illinois.

49. Subsequently, Mr. Moore was found guilty of two counts of aggravated battery to Chicago Police Officer Cortes and two counts of aggravated battery to Chicago Police Officer Heger stemming from the events leading up to his arrest on October 1, 2005 for the alleged and eventually dropped criminal trespass on CTA property.

50. On October 16, 2006, Mr. Moore was sentenced to 57 days in the Cook County Jail and 30 months felony probation. Mr. Moore served 57 days at the Cook County Jail in 2006.

51. In July, 2007, Mr. Moore in his *pro se* capacity filed a complaint alleging civil rights violations under 35 U.S.C. §1983.

## COUNT I -- 42 U.S.C. § 1983 - EXCESSIVE FORCE

52. Mr. Moore realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

10

### **Officer Heger**

53. As referenced above, on at least two occasions, prior to the incidents complained of herein, Officer Heger was charged with wrongful acts involving police brutality and deprivations of the constitutional rights of the citizens of the City of Chicago. For example, in another lawsuit filed against Officer Heger, *Williams v. City of Chicago, Richard Heger, et al.*, Civil Action No. 06 CV 01243, Officer Heger was charged with alleged failure to provide medical treatment under 42 U.S.C. §1983; a state law claim for Willful and Wanton Behavior-Wrongful Death; and a state law claim for Willful and Wanton Behavior—Survival against Officer Heger. The lawsuit was eventually settled by Officer Heger and the other defendants by making a payment of one hundred ninety-five thousand dollars ($195,000.00) to a relative of the deceased. In *Santos v. Richard Heger et al.,* Civil Action No. 03 C 2711, involving alleged civil rights violations as well as intentional assault and battery against Officer Heger, eventually resulted in another settlement in favor of the plaintiff whose civil rights were alleged to have been violated by Officer Heger and the other defendants.

54. Officer's Heger's physical assault at the 23rd District Police Station was unjustified, unprovoked and unnecessary and constitutes an excessive use of force.

55. At the time of the assault, Mr. Moore was already in police custody and had his right arm handcuffed to the wall in an interrogation room and, as such, there was no need for the use of the level of physical force used against Mr. Moore by Officer Heger.

56. Under these circumstances, a reasonable police officer in Officer Heger's position would not have used such force against Mr. Moore.

57. The excessive force used by Officer Heger caused Mr. Moore to endure pain in, among other places, his arm, chest, shoulder, back and head.

58. Officer Heger knew or at least should have known that his actions would cause Mr. Moore to suffer harm.

59. Officer Heger disregarded the risk of harm to Mr. Moore.

60. Officer Heger's actions deprived Mr. Moore of his right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983.

### Officer Cortes

61. As one of the arresting officers, Officer Cortes was physically present during Officer Heger's repeated use of excess force against Moore.

62. At no time during Officer Heger's use of excess force against Moore did Officer Cortes come to Moore's assistance, or take adequate actions to stop Officer Heger or protect Mr. Moore from the acts of Officer Heger even though Officer Cortes was fully aware of the fact that Mr. Moore's right hand was handcuffed to the wall and his ability to shield and protect his body from Officer Heger's attack was curtailed.

63. The acts and/or omissions of Officer Cortes caused Mr. Moore to endure pain in his arm, chest, shoulder, back and head.

64. Officer Cortes disregarded the risk of harm to Mr. Moore and her actions were intended to cause harm to Mr. Moore.

65. Officer Cortes' actions deprived Mr. Moore of his right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983.

## **City of Chicago**

66. Prior to the event alleged herein, the City of Chicago knew or had reason to know that officers of the Chicago Police Department and, particularly Officer Heger, were engaged in the excessive use of force against individuals in abuse of their authority as police officers.

67. Particularly, the City of Chicago knew, prior to the events complained of herein, that allegations of failure to provide medical treatment under 42 U.S.C. §1983; Willful and Wanton Behavior-Wrongful Death; and Willful and Wanton Behavior—Survival had been made against Officer Heger in Civil Action No. 06 CV 01243.

68. The City of Chicago knew, prior to the events complained of herein, that allegations of civil rights violations and intentional assault and battery had been made against Officer Heger in Civil Action No. 03 C 2711.

69. The City of Chicago is responsible for the policies, procedures and training of the Chicago Police Department.

70. Officer Heger and Officer Cortes acted within the course and scope of their official duties as employees of the Chicago Police Department when they engaged in the conduct complained of herein.

71. By permitting and/or failing to correct this practice among Chicago Police Officers, including Officer Heger and Officer Cortes, the City of Chicago acted with deliberate indifference for the constitutional rights of the citizens of the City of Chicago, including the rights of Mr. Moore.

72. The acts of Officer Heger and Officer Cortes were directly and proximately caused by the City of Chicago's policies and/or its failure to train and control its police officers.

73. As a result of the acts/omissions of the City of Chicago deprived Mr. Moore of his right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983.

## COUNT II -- 42 U.S.C. §1983 - UNLAWFUL ARREST

74. Moore realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

### Officer Cortes and Officer Heger

75. On or about October 1, 2005, the defendant officers falsely and maliciously and without probable cause charged Moore with criminal trespass on the Chicago Transit Authority property.

76. The defendant officers each knew or should have known that Mr. Moore was not involved in fare jumping on October 1, 2005.

77. Other than the fact that Mr. Moore and the alleged suspect in the fare jumping incident are both African-American males, there is no similarity between the two.

78. As a direct and proximate cause of the acts and omissions of the defendant officers, Mr. Moore suffered significant injury including physical pain and the loss of his freedom.

**City of Chicago**

79. At all relevant times herein, Officers Cortes and Heger were acting within the scope of his official duty as an employee and agent of the Chicago Police Department.

80. The City of Chicago is liable for the torts committed by its employees and agents in the course of their employment.

**COUNT III -- 42 U.S.C. §1983 - ILLEGAL SEARCH**

81. Mr. Moore realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

**Officer Cortes and Officer Heger**

82. On October 1, 20005, in connection with the traffic stop of Mr. Moore, Officer Cortes, assisted by Officer Heger, conducted a search of Mr. Moore's person without cause.

83. Under the circumstances, reasonable police officers in the position of Officer Heger and Officer Cortes would not have searched Mr. Moore without reasonable suspicion or probable cause to believe that he had committed a crime.

84. The acts of Officer Cortes and Officer Heger deprived Mr. Moore of his right to be free from unreasonable searches and deprived him of his liberty without due process of the law and equal protection of the laws in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983.

## **City of Chicago**

85. Prior to this incident, the City of Chicago knew or had reason to know that officers of the Chicago Police Department, including Officer Cortes and Officer Heger, were conducting unlawful searches and seizures of individual citizens in abuse of their authority as police officers.

86. The City of Chicago is responsible for the policies, procedures and training of the Chicago Police Department.

87. Officer Cortes and Officer Heger acted within the course and scope of her official duty as an employee of the Chicago Police Department when they engaged in the conduct complained of herein.

88. By permitting and/or failing to correct this practice among Chicago Police Officers, the City of Chicago acted with deliberate indifference for the constitutional rights of the citizens of in the City of Chicago, including the rights of Mr. Moore.

89. The acts of Officer Cortes and Officer Heger were directly and proximately caused by the City of Chicago's policies and/or failure to train and control its police officers in order to prevent such misconduct from occurring within the Chicago Police Department.

90. As a result of the acts/omissions of the City of Chicago deprived Mr. Moore of his right to be free from unreasonable searches and seizures and deprived him of his liberty without due process of the law and equal protection of the laws in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983.

## COUNT IV -- BATTERY

91. Mr. Moore realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

### Officer Heger

92. Officer Heger intentionally caused harmful and offensive contact to Mr. Moore's person when he, among other things, repeatedly kicked him in the arm, chest and shoulder; grabbed Mr. Moore and, among other things, repeatedly and violently bashed his head and back against the wall of the interrogation room and pulled his hair while Mr. Moore was handcuffed to the interrogation room wall.

### City of Chicago

93. At all relevant times herein, Officer Heger was acting within the course and scope of his official duty as an employees and agent of the Chicago Police Department when they engaged in the conduct complained of herein.

94. The City of Chicago is liable for the torts committed by its employees and agents in the course of their employment.

## COUNT V: STATE LAW MALICIOUS PROSECUTION

95. Mr. Moore realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

### Officer Cortes and Officer Heger

96. On or about the morning of October 1, 2005, the defendant officers falsely and maliciously and without probable cause arrested Mr. Moore. The officers then

17

charged Mr. Moore with violating the laws of the state of Illinois, including criminal trespassing on CTA property, knowing fully that Mr. Moore did not fit the description of the suspect of the "fare jumping" incident at the CTA property.

97. As a result, Mr. Moore was subject to a criminal judicial proceeding without probable cause.

98. The defendant officers instituted and continued the proceedings falsely and maliciously.

99. The criminal trespassing charge was ultimately terminated in Mr. Moore's favor.

100. The criminal trespassing charge was terminated in a manner that indicates Mr. Moore's innocence.

### City of Chicago

101. At all relevant times herein, Officers Cortes and Heger were acting within the scope of his official duty as an employee and agent of the Chicago Police Department.

102. The City of Chicago is liable for the torts committed by its employees and agents in the course of their employment.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Moore respectfully requests that the Court find in his favor and against the defendants on Counts I through V and that the Court grant Mr. Moore the following relief:

a. Enter Judgment in favor of Mr. Moore and against City of Chicago, Officer Heger and Officer Cortes;

    b.    Award compensatory damages against City of Chicago, Officer Heger and Officer Cortes;

    c.    Award punitive damages against defendant Officer Heger and Officer Cortes in their individual capacities;

    d.    Award reasonable attorneys' fees and costs against City of Chicago, Officer Heger and Officer Cortes;

    e.    Grant any other such other further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff, William Moore, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(a) on all issues so triable.

Respectfully Submitted,

*/s/Christopher J. Lee*
Christopher J. Lee
Laura A. Kenneally
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

**Attorneys for Plaintiff William James Moore**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **FIRST AMENDED COMPLAINT** was filed with the Clerk of the Court on August 13, 2008 using the CM/ECF system, which will send notification of such filing to the following at their email address on file with the Court:

>Marc J. Boxerman
>City of Chicago, Corporation Counsel
>30 North LaSalle Street
>Suite 900
>Chicago, IL 60602
>312-744-7684
>Email: mboxerman@cityofchicago.org
>**Counsel for Defendant Richard Heger**
>
>Robert Charles Rutherford
>City of Chicago
>30 North LaSalle Street
>Chicago, IL 60602
>312-742-7036
>Email: rrutherford@cityofchicago.org
>**Counsel for Chicago Police Department**

*/s/ Christopher J. Lee*